UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

THOMAS D.,

                Plaintiff,

-v-

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

1:20-CV-01821-MJR
DECISION AND ORDER

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 10).

Plaintiff Thomas D.[1] ("plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, plaintiff's motion (Dkt. No. 7) is granted and defendant's motion (Dkt. No. 8) is denied and the matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

## BACKGROUND[2]

Plaintiff protectively filed an application for DIB on January 26, 2018 alleging an amended disability onset date of December 12, 2012 due to myotonic dystrophy,

---

[1] In accordance with the District's November 18, 2020 Standing Order regarding the identification of non-government parties in social security opinions, plaintiff is identified solely by first name and last initial.

[2] The Court presumes the parties' familiarity with the plaintiff's medical history, which is summarized in the moving papers.

dysphagia, difficulty standing and walking, foot and hand weakness, hearing loss, and a broken back. (*See* Tr. 12, 14, 63).[3] Plaintiff's disability benefits application was initially denied on March 28, 2018. (Tr. 61). Plaintiff sought review of the determination and a hearing was held before Administrative Law Judge ("ALJ") JuanCarlos Hunt on December 10, 2019. (Tr. 30-60). ALJ Hunt heard testimony from plaintiff, who was represented by counsel, as well as from Matthew Lampley, a vocational expert ("VE"). (*Id.*). On February 18, 2020, ALJ Hunt issued a decision that plaintiff was not disabled under the Act. (Tr. 9-28). Plaintiff timely sought review of the decision by the Appeals Council and his request was denied. (Tr. 1-6). The ALJ's February 18, 2020 denial of benefits then became the Commissioner's final determination, and the instant lawsuit followed.

Born on September 23, 1963, plaintiff was 49 years old on the amended alleged disability onset date and 56 years old on the date of the hearing. (Tr. 24, 62). Plaintiff is able to communicate in English, has a limited education, and previously served in the military and worked as a packer, mechanic's helper, and bus driver. (Tr. 33-38).

## DISCUSSION

I.   *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic

---

[3] References to "Tr." are to the administrative record in this case.

evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.     *Standards for Determining "Disability" Under the Act*

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of

not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is

not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §404.1520(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.*

If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III.  *The ALJ's Decision*

The ALJ found that plaintiff met the insured status requirements of the Act through December 31, 2014. (Tr. 14). The ALJ then followed the required five-step analysis for evaluating plaintiff's claim. Under step one, the ALJ found that plaintiff did not engage in substantial gainful activity since the amended alleged onset date of December 12, 2012. (*Id.*). At step two, the ALJ found that plaintiff had the following severe impairments: (1) myotonic muscular dystrophy, (2) hearing loss, (3) degenerative disc disease, and (4) status-post lumbar surgery in 2004. (*Id.*). At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 15). Before proceeding to step four, the ALJ assessed plaintiff's RFC as follows:

> [T]hrough the date last insured, the [Plaintiff] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), except he frequently can balance, crouch, kneel, crawl, stoop, and climb ramps, stairs, ladders and scaffolds; he frequently can reach and finger bilaterally; he frequently can push, pull, and operate foot controls bilaterally; he needs to avoid concentrated exposure to fume, dusts, odors, gases, poor ventilation and other pulmonary irritants, and high ambient (loud) noise environments or where good hearing is essential to job performance or safety, such as around hazards such as unprotected heights and machines with moving mechanical parts, but he retains sufficient hearing to avoid ordinary hazards in the workplace and hear an alarm or public address announcement; he needs to avoid exposure to unprotected heights and uneven surfaces; and he will be off task five percent of the day due to, for example, the need to alternate positions.

(*Id.*).

Proceeding to step four, the ALJ reviewed the vocational information and the testimony of VE Lampley to conclude that plaintiff is unable to perform any past relevant work given the limitations set forth in his residual functional capacity. (Tr. 24). The ALJ noted that if the plaintiff had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed. (Tr. 25). However, the ALJ assessed that plaintiff's ability to perform light work was compromised by additional limitations. (*Id.*) Proceeding to step five, and after considering testimony from VE Lampley in addition to plaintiff's age, education, work experience, and RFC, the ALJ found that there are other jobs that exist in significant numbers in the national economy that plaintiff could perform, such as sorter, collator operator, and routing clerk. (*Id.*). Accordingly, the ALJ found that plaintiff had not been under a disability within the meaning of the Act from December 12, 2012, the amended alleged onset date, through December 31, 2014, the date last insured. (*Id.*).

IV.   *Plaintiff's Challenges*

Plaintiff argues that this decision is not supported by substantial evidence because the ALJ relied on his own lay opinion to make the residual functional capacity determination. The Court agrees.

An RFC assessment "is the most [a claimant] can still do despite [their] limitations." 20 C.F.R. § 404.1545. An ALJ must assess the claimant's RFC by using "all the relevant evidence in [the] case record." *Id.* However, there must be "substantial medical evidence to support [his] opinion." *Salone v. Berryhill*, No. 6:16-CV-06491-MAT, 2018 U.S. Dist. LEXIS 205545, 2018 WL 6333421, at *2 (W.D.N.Y. Dec. 5, 2018) (quoting *Goldthrite v.*

7

*Astrue*, 535 F. Supp. 2d 329, 339 (W.D.N.Y. 2008) (remanding when RFC finding not supported by substantial evidence).

"[A]n ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Perkins v. Berryhill*, No. 17-CV-6327-FPG, 2018 U.S. Dist. LEXIS 115388, at *7 (W.D.N.Y. July 11, 2018) (citing *Wilson v. Colvin*, No. 13-CV-6286P, 2015 U.S. Dist. LEXIS 27804, 2015 WL 1003933, at *21 (W.D.N.Y. Mar. 6, 2015) (citation omitted). Thus, even though the Commissioner is empowered to make the RFC determination, "[w]here the medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities," the general rule is that the Commissioner "may not make the connection himself." *Id.*

An ALJ is not qualified to rely on only "raw medical data" to determine Plaintiffs limitations or to craft an RFC. *Henderson v. Berryhill*, 312 F. Supp. 3d 364, 371 (W.D.N.Y. 2018) (holding ALJ was not permitted to rely on treatment notes to craft an RFC after rejecting medical opinions). Rather, an ALJ should rely on medical opinion evidence, based on that raw data, to address the claimant's "functional or work capacity limitations." *Jermyn v. Colvin*, No. 13-CV-5093 (MKB), 2015 U.S. Dist. LEXIS 36389, 2015 WL 1298997, at *19 (E.D.N.Y. Mar. 23, 2015) (remanding when ALJ relied on record with no expression of functional limitations); *see Benman v. Comm'r of Soc. Sec.*, 350 F. Supp. 3d 252, 257 (W.D.N.Y. Nov. 20, 2018) (acknowledging that although an ALJ's decision need not perfectly correspond with any of the opinions, an ALJ is not a medical professional and is not qualified to assess a claimant's RFC on the basis of bare medical

findings); *Goble v. Colvin*, 15-CV-6302-CJS, 2016 U.S. Dist. LEXIS 74637, at *20 (W.D.N.Y. 2016) ("the ALJ's RFC determination must be supported by competent medical opinion; the ALJ is not free to form his own medical opinion based on the raw medical evidence"). "Decisions in this district have consistently held that an ALJ's RFC determination without a medical opinion backing it is, in most instances, not an RFC supported by substantial evidence." *Gibson v. Comm'r of Soc. Sec.*, 19-CV-1582, 2020 U.S. Dist. LEXIS 205103, at *13 (W.D.N.Y. Nov. 3, 2020) (quoting *Smith v. Saul*, 2019 WL 2521188, at *2 (W.D.N.Y. June 19, 2019)).

Here, plaintiff argues that the RFC determination relative to the use of his hands and fingers is not supported by substantial evidence because it was formulated without a medical opinion. The only opinion evidence available to the ALJ was that of the state agency medical consultant, Dr. Stouter. (Tr. 66-68). Dr. Stouter opined that plaintiff could perform light work with further limitations. (*Id.*). In addition to certain exertional, communicative, and environmental limitations, Dr. Stouter found that plaintiff had manipulative limitations which limited his functional capacity to only occasional fingering or fine manipulation in both hands. (*Id.*). As the ALJ acknowledged, Dr. Stouter's finding was supported by detailed medical evidence from the relevant period which reflected plaintiff's diagnosis of myotonic muscular dystrophy and weakness of his hands and lower extremities. Dr. Stouter specifically referenced examination records indicating "bilateral atrophy of anterior legs, forearms, and intrinsic hand and foot muscles," and weakness in "wrist extension and flexion, finger extension and abduction, and hand grip." (Tr. 68).

The ALJ found the medical opinion to be "somewhat persuasive," but he rejected Dr. Stouter's finding that plaintiff was limited to "occasional fingering." (Tr. 21-22). The

ALJ reasoned that although the opinion was well supported, Dr. Stouter's finding that plaintiff was limited to occasional fingering was not consistent with the longitudinal medical evidence. (*Id.*). The ALJ explained that the medical record showed less severe manipulative limitation. He cited various treatment records, including those of Veterans Affairs neurologist, Dr. Nicholas Silvestri from December 18, 2012, who noted "mild grip mytonia bilaterally." (*Id.*; Tr. 381). Dr. Silvestri further noted that he was holding off on occupational and physical therapy consultations because plaintiff had only mild abnormalities in terms of strength and his weakness was not interfering with his activities of daily living. (*Id.*). On May 13, 2013, plaintiff's primary care doctor, Dr. Elois Aguirregoitia, noted normal motor strength in his upper extremities. (Tr. 18; 22; 806; 809). During a June 18, 2013 visit, Dr. Silvestri's examination records indicated "weakness of finger extensors and flexors, MRC grade 4/5, and likewise, interossei were 4/5 bilaterally. (Tr. 18; 22; 785-87). That record also states that plaintiff has "wasting of both intrinsic hand and foot muscles bilaterally, […] mild grip myotonia bilaterally; however, I could elicit no percussion myotonia. Sensation was intact to vibration." (*Id.*). It goes on to state that plaintiff's "hand weakness and resultant impaired dexterity are largely unchanged. He still experiences myotonia but this is not functionally limiting." Plaintiff noted, during that visit, that "he has good days and bad days with his hands but there are no clear precipitants." (*Id.*). The ALJ further referenced an October 23, 2014 treatment record of Dr. Luisa Rojas at Dent Neurology which listed motor examination results and deficits and noted atrophy in plaintiff's bilateral forearm and intrinsic hand muscles, as well as bilateral handgrip myotonia. (Tr. 22; 287).

The ALJ also summarized plaintiff's own function report, which stated that plaintiff's myotonic dystrophy affected his ability to lift, stand, walk, climb stairs, kneel, squat, and use his hands. (Tr. 16). Plaintiff claimed that, beginning in 2012, he had difficulty using his hands and could not do much with them; noting that his right hand was worse than his left. (Id.). He reported difficulty with gripping, picking, carrying, and buttoning. For example, plaintiff stated he "could lift a gallon of milk with one hand, but could not hold it for long and used his forearms." (Id.). Despite this, the ALJ found that plaintiff's medical conditions did not interfere with his activities of daily living during the period at issue. (Tr. 22). He noted that plaintiff reported in his testimony that he could independently handle personal hygiene, he could make simple meals, and he could do chores, including shopping and cleaning. (Id.). The Commissioner appears to argue that fingering and manipulative skills are implicit in the tasks of hygiene, cleaning, and cooking which the ALJ references. However, the ALJ referred to these activities only in a general manner and did not specify the effect, if any, of plaintiff's manipulative limitations on his activities of daily living.

While there may be some instances where an ALJ may rely on common sense to make an RFC determination without medical opinion evidence, this is not one of them. *See Moore v. Colvin*, No. 6:15-CV-06281-EAW, 2016 U.S. Dist. LEXIS 124491, at *46-47 (W.D.N.Y. Sept. 13, 2016) (citing *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (holding that an ALJ is not entitled, as a non-expert, to interpret the voluminous evidence of plaintiff's physical impairments using his own common sense)). In order to determine an RFC without opinion evidence, the record must show limitations that have "measured, quantified, or described" themselves in a way that "permits reasonable inferences" of the

claimant's RFC. *Hoehn v. Colvin*, 14-CV-6401, 2016 U.S. Dist. LEXIS 7019, at *8 (W.D.N.Y. Jan. 21, 2016). The record should "specifically indicate the extent to which plaintiff's ... injuries can be expected to affect his [or her] ability to perform the physical requirements of work." *Id.*

Although the ALJ's decision summarized medical evidence about plaintiff's hands and upper extremities, that evidence offered little insight into how plaintiff's medical conditions affected his function and ability to perform work-related tasks. *See Urban v. Berryhill*, 16-CV-76-FPG, 2017 U.S. Dist. LEXIS 53774, at *8 (W.D.N.Y. Apr. 7, 2017) (finding error where the ALJ relied on medical treatment notes which contained bare medical findings and did not address how plaintiff's impairments affected her physical ability to perform work-related functions). Further, in the record before the ALJ was ample evidence of muscle atrophy and deficits in plaintiff's wrists, fingers, hands, and feet, which could reasonably be expected to affect his ability to perform manipulative tasks. Although the ALJ cited treatment records containing two notes from treating physicians indicating only mild impairment, the record does not speak sufficiently to the specific physical limitations that plaintiff's myotonic muscular dystrophy could be expected to produce. *See Hoehn*, 2016 U.S. Dist. LEXIS 7019, at *7. For example, the record describes grip myotonia, hand weakness, and forearm and hand muscle atrophy but does not indicate how these conditions would affect plaintiff's ability to perform the physical requirements of work (e.g., lifting, reaching, handling, and fingering). As such, the record does not provide a sufficient basis for the ALJ to determine plaintiff's RFC. *See Balistrieri v. Saul*, 19-CV-293, 2020 U.S. Dist. LEXIS 96775, at *14 (W.D.N.Y. June 2, 2020) (finding that ALJ relied on her own lay interpretation of medical evidence when formulating RFC based

only on examination records indicating limited range of motion, pain and tenderness, and use of pain medications); *Perkins*, 2018 U.S. Dist. LEXIS 115388, at *11 ("The treatment notes that the ALJ refers to contain complex medical findings and do not suggest only minor impairment, and therefore the ALJ could not render a common sense judgment about [plaintiff's] functional capacity.").

The Commissioner argues that the ALJ's decision was well-supported and that the ALJ has the purview to reject any portion of a medical opinion that is not supported by the record. However, regardless of whether the ALJ properly discounted Dr. Stouter's opinion, the ALJ's rejection of the only medical opinion speaking to plaintiff's manipulative limitations created an evidentiary gap that requires remand. *See Hopper v. Berryhill*, 16-CV-6573, 2017 U.S. Dist. LEXIS 195142, at *8 (W.D.N.Y. Nov. 28, 2017). By failing to clarify or otherwise supplement the only opinion in the record, the ALJ left a gap in the record and relied instead on his own lay opinion to interpret the medical records and testimony. When such an evidentiary gap exists, the ALJ's RFC determination is not supported by substantial evidence and remand is warranted. *See Gross v. Astrue*, 12-CV-6207, 2014 U.S. Dist. LEXIS 63251, *50-54 (W.D.N.Y. May 7, 2014). Further, because the VE testified that if Plaintiff was limited to occasional fingering then he would be precluded from all competitive work, the ALJ's substitution of his lay opinion represents harmful error. (Tr. 58).

In sum, this Court holds that the ALJ's decision is not supported by substantial evidence. Remand is required for clarification of Dr. Stouter's opinion or to obtain a more

13

specific assessment of the plaintiff's physical functional limitations during the relevant period.[4]

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Dkt. No. 7) is granted, the Commissioner's motion for judgment on the pleadings (Dkt. No. 8) is denied, and this matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

The Clerk of Court shall take all steps necessary to close this case.

SO ORDERED.

Dated:   March 28, 2023
         Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge

---

[4] On remand, the Commissioner is also directed to address Plaintiff's objection that the ALJ's finding that Plaintiff would be "off task five percent of the day" (Tr. 15) was not based on evidence in the record.